Good morning. Welcome to the Wednesday edition of this week-long sitting in Atlanta. We're pleased to have you here before us. Before we get started, before I call the first case, just a couple of rules of the road. I think many of you have been here before. You kind of know the drill. Just know that we've read your stuff, the briefs, the underlying cases, the record material, the statutes, so we understand what the cases are about. Don't waste your time with us with a bunch of factual and procedural ramp-up. Just get right to it. Number two, you'll understand the traffic light system that we've got here. Green, you're good to go. Yellow, we hope that you'll begin to wind up. And red, we hope you'll stop. I'm not the kind of guy, for better or worse, that's going to cut you off in the middle of a syllable. I just don't really know how to do that. But I ask you would read our body language. If you're into the red light and we're kind of nodding along, you'll know it's time to quit. All right, very well. Let's call the first case. 21-12468, Carter v. The City of Montgomery. I've got Ms. Wilner here for the appellants, Mr. Green and Ms. Holliday here for the appellees. Whenever you're ready. Good morning, Your Honors. May it please the Court. Defendants in this case operated a debtor's prison scheme under which hundreds of indigent people were jailed for not paying fines and fees without consideration of their inability to pay in violation of Bearden v. Georgia. The district court's refusal to grant class certification was riddled with reversible error. But I want to focus today on two especially important questions. The Montgomery Municipal Court abused its discretion when it classified a critical common question, whether the Montgomery Municipal Court made Bearden determinations prior to jailing the class members as individual and thus defeating predominance. This is a common question and it's subject to common proof. There is no evidence that the Montgomery Municipal Court made a Bearden determination on behalf of any class member. And from this that we intend to present, the jury can and should infer that the Montgomery Municipal Court didn't make a Bearden determination for any class member. So, sir, let me ask you a question. I know that you seize, I think, sort of from an advocacy perspective not unreasonably on this language in the district court's opinion about systemic violations. But are we reading too much into that? I mean, can we really sort of, how much can we freight that one term with? I mean, it seems to me that whether these determinations were made is almost necessarily a case-by-case determination. I don't think so, Your Honor. And there's a few important reasons for that. First of all, we know that Bearden requires that determination be recorded. And in Bearden itself, when the So without a record of an ability to pay determination, it didn't happen. The lack of record itself is a fundamental violation of due process. But Bearden itself doesn't require written findings. So is there a way that the record could be established after the fact if we have the judges saying in every case, I held the Bearden hearing? Well, I have two responses to that, Your Honor. And one is substantive, and one is related to a class action law in Rule 23. And I think I'll address that point first because it's simple. If the evidence on our side is that there were no Bearden determinations in any case, and the evidence on their side is there were always Bearden determinations, and none of that evidence is specific to any class member, then the question is common. And it can be answered by the jury at the same time for every single class member. The evidence seems to suggest, though, that of the six judges, some did some things one way and some did some things the other way. For instance, the Alabama Court of Inquiry order that you rely heavily on focuses on the actions of one judge, although there are some broad statements there. But it appears that other judges who are sort of less the correct way or were less inclined to do things consistent with as alleged in the class, right? Well, the Alabama Court of the Judiciary made a specific factual finding that's very important and applies to every single member of the class, not just Judge Hayes. And that finding was that the judges of the Montgomery Municipal Court, as a general practice, didn't issue written opinions or make oral pronouncements in court that sets forth the basis for the decision to convert fines and fees to jail time. Right, but that's separate from whether, under Bearden, whether an inquiry was made and whether someone was actually jailed substantively, someone was jailed despite the fact they couldn't afford it. Those are, that's what Bearden protects. An inquiry needs to be done and someone cannot be jailed if they cannot afford to, if they're not willful or contemptuous of the court order. So the question simply is, isn't there some evidence to suggest that some judges were doing their job and some judges were not doing their job? There's no evidence for any of these class members that an ability to pay finding was made for any of them. The idea that it could have happened on this record is speculation. Well, you keep using the word finding, and that's different than the word that I use, which was inquiry, and I use my word specifically and carefully. So with regard to inquiry, isn't there evidence from some of the judges who testify that they did, as a general matter, do inquiries, and from the public defenders, who is their recollection that inquiries were done? That is in the record, right? Yes, there is general evidence of general practices of the court, where they said that they made inquiries. Now, our evidence... And then there were some judges, I apologize for interrupting, there were some judges, I think it was Judge Hayes in particular, who said, yes, sometimes I didn't do my job. So that seems to be a disparate thing here that would require a judge or a fact finder to look in to determine who got the inquiry and who was actually couldn't afford it and who did not get the inquiry and who could afford it. In that case, Your Honor, I mean, in this case, that evidence of what happened at all of these individual determinations, it doesn't exist. And under Clay, the jury is entitled to presume or infer class-wide injury from circumstantial evidence. Bearden itself tells us that the lack of an ability to pay finding is circumstantial evidence that there wasn't a finding. So our class members were entitled to argue this inference to the jury, and the inference is common to all of the class members. The district court abused its discretion by denying them the opportunity to make that argument. Isn't Clay, though, different? I mean, so Clay, right, was an effort to prove a nationwide conspiracy, and the court in Clay said, look, the class members here are not, quote, seeking to litigate separate discrimination claims that arose from a variety of individual incidents together in the same action simply because they have alleged acts of discrimination occurred pursuant to corporate policies. That sounds like exactly, by analogy, what you're seeking to do. It seems like you're seeking to do what the Clay court said. Don't worry. This, that's not what's happening here. No, I don't believe so, Your Honor, because in Clay, I mean, there were a lot of issues in Clay that was a complex opinion. But there was a particular issue, and that was reliance, whether reliance could be presumed on behalf of the client, of the doctors, because reliance is normally individual. And in that case, the court said that with the circumstantial evidence that was presented and based on common sense inferences, reliance could be inferred based on the evidence that was presented. And that is the same principle that operates here because we have no record of any ability to pay finding. We have judicial findings from the Judicial Inquiry Commission that those findings typically were not made. We have testimony from the public defenders that he couldn't recall a single defendant for whom he'd ever requested an indigency determination, nor could he recall ever making an indigency determination in writing. But testified that, to his recollection, these things were done as a general matter. Well... I mean, if you represent 10,000 people, it is tough to remember a single, without a file in front of you, a single client. But you can remember generally these things were done. I mean, that's not unusual, is it? A bearding requires a very whether the defendant made bona fide efforts, whether alternatives could satisfy the court, the state's interests. And those inquiries, they weren't made. And there also, there is no record of them. And that, in and of itself, is a fundamental violation of due process. The court is making this very important decision that goes to the base of these class members' freedom. It's taking their liberty and putting them in jail. Would you have any damages or injury if your only claim, assuming you made this claim, if your only claim was there's a lack of findings made on the record? Yes, under Kerry v. Pifus, because... What would the... I'm not saying of claim. What would your injury or damages be? So the injury would be the violation of the procedural right? Right. What's the... And every procedural violation imports damage. So there would be at least a nominal damage... Right. You get a dollar. ...on the part of every class member. Right. You'd have a dollar. Correct. For 516 people. Under Kerry v. Pifus, the burden shifts. And class members are also entitled to lost liberty damages unless defendants come forward with proof that the jailing would have happened. Can you show me in the Carter complaint where you made the allegation that you're talking about now? Not the allegation of lack of findings, but that you were injured and are entitled to nominal damages because there is a lack of findings that were made. It's not there. Right. I'm sorry. I didn't answer that question. I'm actually counsel for McCullough, so I'll let my Carter colleague answer that question. Okay. Can I ask you a question just before your time runs out? On the false imprisonment class, the focus of your challenge is that the district court's commonality determination was wrong. What do we do with the sentence at the end of the section of the district court's opinion where it says, even if the plaintiffs could show a common issue of fact or law, they wouldn't or they would be unable to show predominance? Because I suspect that you may be right about the error in finding the lack of commonality, but predominance requires more, and it seems like there is an alternative conclusion here that there's a lack of predominance. What do we do with that? Well, we did appeal all of the basis for the court's decision, and the court didn't offer any findings. It's a reversible error for a district court to rule that common issues don't predominate without even setting forth the basis for the decision. There was no... Well, I guess what I'm saying is, wouldn't the analysis that the district judge termed commonality, likewise, it's basically the same inquiry. It's really just a higher threshold for predominance, so wouldn't that sort of double for a predominance determination? I don't know, Your Honor. The district court didn't say he was ruling on predominance. He said there was a lack of commonality, despite the fact that he found that the class reps were typical, that there were same claims, same theory of the case. The commonality ruling is inexplicable. So can I follow up on that? So I think what Judge Newsom is asking about, and I actually have the same question, is on page 43 of the McCulloch order, it states, quote, individual questions dominate this claim. So that's not just commonality, that is predominance inquiry. And so my follow-up question with that same sentence that I think is the one that Judge Newsom is referring to is, I have your blue brief in front of me. Can you just show me the section in your brief in which you appeal the predominance finding with regard to the false imprisonment claim? It's in the opening brief. Right, in the blue brief. And if you want, we can come up on rebuttal. I'm happy to do that. Yeah, it's fine if you take your time while the other side is going to figure it out. Okay, yes, I know that we identified all those page numbers, but I just didn't have the... Yeah, that's good. Take your time. Thank you so much. Take your time. Thank you. All right, let's hear from the appellees. Ma'am, please, I'm Cor Wilson Green from JCS. Abuse of discretion is a steep hill to climb. We've got seven abuses of discretion that the appellants are claiming to be reversible error. To Judge Luck's question, is one of them that the district court abused its discretion with respect to predominance on the false imprisonment claim? I don't think that issue is properly before the court because, as we pointed out in our red brief, they never challenged the fact that there are eight essential elements to the false imprisonment class as identified by the district court in its class certification denial. They don't challenge that in the blue brief. On reply, they come back in the gray brief and say they raised it, and they point to two sentences, one concerning the Cherry issue and another, a conclusory sentence about predominance. So they don't ever take apart those eight issues that were identified and assign error as to how and to demonstrate how they can, through common evidence, establish those essential elements. So I don't think, I think false imprisonment is off the table. I think the core of what we're dealing with here is really the, quote, 1983 period. Can I talk about what I think, I want to ask you about what I think is one particular error that is there and that your opposing counsel has a point on, and that is the discussion of manageability or ascertainability in the context of predominance. You agree with me that seems to be not right? What I would say about that is that it's a function of an over-inclusive class. That's really the core problem. Well, maybe or maybe not, but that doesn't really answer my question, which is, is discussing that in the nature of whether a claim is predominant or not, or whether common issues predominate or do not predominate over individual ones, is not really the mechanism to talk about I think as a matter of reading the four corners of Cherry, I understand the point your Honor's making. Well, even, but, so you agree with me Cherry does, would not necessarily support that? No, the problem is, when you really get down to it, the problem is they're claiming, the first sentence you heard from the appellants when they stood up here was indigent. So they put indigency at issue, but the class as defined includes indigents and non-indigents. So let me just break that down. You agree with me at least that a fair reading of Cherry would suggest that manageability and ascertainability are done at the superiority stage, correct? I agree with that. Okay. But, but, then let me ask this. Then let me ask this, Counsel. So your opposing counsel also makes a very interesting point that if you look at the text of Rule 23, it seems to suggest the text in the predominance inquiry that it deals with common issues of class members over individual issues of class members. In other words, it assumes those in the class. So manageability and ascertainability apply to people that are outside the class or whether to decide that seems to be outside the text of what we consider a predominance, right? I agree. The problem is when you really get down to it, and this is the point I want to ultimately bring to the Court, I think the Court can avoid all this Cherry discussion. The narrow path to cut here is abuse of discretion is a steep hill to climb. The core predominance inquiry on the Bearden claim is correct, that what happened at a Bearden hearing is an individualized issue, it's a class killer. And so you really can stop right there. So, Counsel, I just want to close the loop on this series of questions that I'm asking you. If we find that it was an error of law for the District Court to consider manageability and ascertainability in the predominance side, and abuse of discretion is an error of law, what do we do with regard to the rest of what needs to be found regarding the Bearden classes? I would say that it's harmless error. It's not reversible error. Why? It's error without injury. Because the same analysis holds with respect to the predominance issue. The class was still due to be certified for lack of predominance. It's a moot point. You can pre-termit discussion of the entire issue. So I just want to hear, I just want to understand your point. Your point is simply, while the court may be put it in the ascertainability section, it does correctly apply in the superiority, and that would be an independent reason to find. And that's exactly right. It applies to superiority and manageability, which is a subset of superiority. And even though the Cherry Court says that rarely, if ever, will manageability concerns standing alone warrant a denial of certification, here there was a lack of predominance and a lack of manageability. So again, it's actually legally correct. So counsel, let me ask you about another, we don't have a lot of time together. Let me ask you about another possible error here. And that is this interesting discussion the district court has about requiring jury trials for who's in and who's out of the class. That doesn't seem to be right. That there, at least the jury trial is required. That may be one way to go about doing it, but that doesn't seem to be the necessitated, required way to determine who's inside or outside the class. No, I think actually on this one, the appellants are right. The rule says the court's supposed to determine who's inside and outside the class. What happens is when you have an over-inclusive class where a fact finder's going to have to determine who's indigent, who's not, who was willful, who was not, then all of a sudden you have a Seventh Amendment issue that creeps in where you've got to figure out, okay, who's supposed to be the proper fact finder to figure out who's in the class and who's not? I realize the district court didn't put it in that terminology, but that's really what's going on here. And that's really one of the reasons I would submit. But if a big part of the manageability finding and superiority is that there's going to have to be these jury trials, and that's just not true, it could be there's any number of ways to go about doing this. You're right that it has to be done, but there are any number of ways to go about doing this. That seems to be at least a mis-weighing of the burdens of individual assessment, right? Yes. Yes. And I think this is where the use of discretion standard comes front and center, which is the district court has a range of choice, and it decides this is too big of a mess to try to sort out in a class setting. And the reason is, again, first principles. What happened at a hearing, they admit there was a hearing. Somebody appeared before a judge before they were commuted, okay? So once the question is asked, why aren't you paying, a beard and hearing has begun. Right there, four words, the beard and inquiry has started. And so then a beard and inquiry can be completed depending upon how the probationer answers that question. If somebody just says, because I don't want to pay, which is, believe it or not, that's exactly what Angela McCullough said. I mean, her deposition testimony, they take us to task in a reply brief on this, but it's dead on. She said, a JCS record showed you never made appointments or paid any money. Do you dispute that? I do not. It sounded like you had decided from the get-go. I'm not going to do that. Is that fair answer? Yes. Counsel, so as part of the beard and claim, your opposing counsel says here, and both in brief, that it seems to be a part of beard and requires some recording of the findings. And without that, there's assumptions that are made here. And it seems clear that there's no either written or oral recording of findings here. That's separate of whether inquiry was made, but there doesn't appear to be an oral or written recording of things. Was that claim raised by the Carter plaintiffs? And if so, why is that not part of the beard and analysis here? I don't think it was properly raised, number one. We pointed that out in our record brief. And more importantly is this. To hold JCS liable, whether or not a beard and violation has occurred by the municipal court, to hold JCS liable, you've got to show per Monell and per the causation standard that a JCS policy was the driving force or the moving force of the violation. That's separate and apart from, you may be right in terms of the merits, but that's separate and apart from my question, which is simply, as a matter of law, does Bearden require recordings and without them, is there not a presumption that attaches to a lack of recordings regarding a lack of inquiry being made? No, Bearden does not require recordings. We briefed that it doesn't require written findings. And with regard to recordings, again, I would say that if we decide some law about the flexibility of the due process standard in the context of this, remember the Montgomery Municipal Court. Municipal courts in Alabama are not courts of record. So there are not generally things like that. You don't have transcribed hearings and things like that. Sounds like a bad policy. But it's not a bad JCS policy. Counsel, I want to focus on pages 34 and 35 of Docket Entry 145, which is the operative Carter complaint. It states in the section setting out the cause of action, the Bearden cause of action, quote, In this process of converting fines to jail time, Montgomery did not give adequate notice to the offender of the nature of any lawful charge. It failed to conduct hearings, failed to make written findings concerning the reasons for any probation, revocation, or the evidence relied upon, and failed to make written findings concerning any willful nonpayment of fines and costs before imposing incarceration for failure to pay fines and costs. Is that not raising the claim of the lack of findings? I would say this. It certainly was never a focus in the district court, having lived through this litigation for eight years. We never heard anything about it until very recently. I would also say this. Ultimately, it doesn't matter because to find JCS liable, JCS is not just strictly liable for the actions of the court. There has to be a JCS policy. The theory of the case has decided, may I finish my answer? Yeah, please, and then I've got to follow up. The theory of the case has decided, at summary judgment, was that JCS had information bearing on indigency in its files, which it did not hand over to the municipal court before the municipal court made an eventual commutation decision, notwithstanding the fact that that was generally months and months later, sometimes years later. That said, that was the policy, the animating policy, the JCS policy, to causally link a of the municipal court. And so that's the theory of the bankruptcy norm, which means they had to define the class and show that there was information bearing on indigency, which by the way, there wasn't with respect to any of the three Bearden plaintiffs, and they haven't demonstrated that. I mean, LeBron, he was making $70,000 a year with his girlfriend, and so I mean, it's not, you know, you cannot make that kind of a determination on a class-wide basis. All right, I said follow up. It's not really a follow up. These are separate questions, and you can be very quick. With respect to to sort of flee on the hair of the tail of the dog, I get it. This is not what the argument's focus has been. But with respect to the close subclass, the typicality determination there, does that survive? If we conclude that predominance, that there is no predominance with respect to the Bearden class, does the close subclass claim just fall by the wayside? I think it does. I would defer to my Montgomery counsel. That claim is the close subclass is not asserted against JCS, but I would defer to Montgomery counsel on that. Okay, separate question, but not unrelated. With respect to the Kenny Jones adequacy issue, if we conclude that there is a predominance determination with respect to false imprisonment, and that there is no predominance, does the Kenny Jones claim fall by the wayside? I think that issue falls by the wayside regardless. There were other class reps. It's just, it's not a... Well, I get it that you're, now you're arguing sort of the merits of the Kenny Jones claim. I guess I'm asking is, do we even need to get to the Kenny Jones claim if we conclude that there is no predominance with respect to the false imprisonment class? No, I don't think you should get to that issue. I would submit, I don't think the court needs to get to that issue regardless. Okay, okay. That's helpful. Thank you. Your Honor, with respect to the closed subclass, I do agree that predominance does control that subclass as well. The court was right about typicality in connection with that, so you can rule on both grounds if that answers your question. I guess, the reason I ask is that I'm not certain that the court was correct about typicality. Maybe, maybe. Well, it was. You don't have to get to that because the predominance issue does apply across the board because what happened at the hearings, even with respect to the adequacy of counsel, is hearing specific. You have to know what happened at each and every hearing, but I wanted to focus on that. What was the nature of the claim though? I mean, what was the nature of the class subclass claim? In other words, how was this claim raised by the plaintiffs here? Well, I haven't studied it. It was raised in a very different way than it's been prosecuted here against the city. I can't recall exactly how it is. It was converted against the city to some sort of funding mechanism that wasn't in the case. Well, it's an ineffective assistance of counsel claim, and so the question is, what's the proper theory that they went under? The district court's view in its order was that the main set of plaintiffs here went under an inadequate representation theory, but that Mr. Carter himself had sort of a zero representation theory because his attorney happened to be outside talking to another client at the time that his quick hearing happened. So in looking though at the Carter complaint, it seems that the complaint references lack of representation and inherent conflicts of interest, which are sort of the chronic kind of errors rather than the strickland kind of errors that the district court seemed to rely on. Why then is Mr. Carter's claim not typical if that's the nature of the claim that he actually brought? Well, because the undisputed evidence is the vast majority of the putative class members they are bringing the case on behalf had counsel present with them before the... I understand. There's definitely a factual wrinkle. There's no doubt about that. But the question is, does that factual wrinkle mean there's a separate legal theory? That's the typicality question that we need to ask under our law. And what seems to me is if the underlying claim for everybody is these attorneys were so overworked, underfunded, and had an inherent conflict of interest that nobody was represented, that just seems to be a factual wrinkle to nobody was represented, whether an attorney was actually in the courtroom or whether one was standing there but really didn't bother to do anything because they had 16,000 clients in less than a year. Right. And the facts don't show they had 16,000 clients, and we can talk about that. But it is a very different case because the facts here show that Mr. Close didn't appear with Mr. Carter because of what the judge did, not because of what any policy of the city of Montgomery. And so it is a completely different claim in that respect. And so his claim also has different elements. You know, for him to prevail, he doesn't have to show what the rest of the class members have to show, which is, I had a counsel present, but they were, in fact, inadequate. And that's hearing specific. I had counsel present, and they were inadequate, but there would have been a likely different outcome. So the Strickland claim is completely different from the chronic claim where you can assume injury. And so they are two completely separate claims. And there is a very small minority of people who were where the docket was rushed by this particular judge, and people didn't appear. So he simply does not represent the other folks in that class. And then the claim against Montgomery is completely different. I mean, Close class really is against Mr. Close. The city, there's a city class that incorporates the Sixth Amendment claim. And for your argument, typicality applies also to the city, the case against the city. And it's because the policy of the city has to be the moving force behind the inadequate counsel. And in this particular instance, it was not the policy of the city, even arguably, because Judge Henley, the judge who was in charge that day, could well have said, I'm going to wait until the public defender's ready. I will not see anybody until the public defender's here. That is not anything that can be put at the doorstep of the city. And that's one thing I want to remind all of the court about. This is Monell liability. And the real claim of the plaintiffs is that JCS and the city for Bearden and the city for the Sixth Amendment claim has to be liable, should be held liable for everything that the court did. And so typicality falls is a really good explanation of that. Typicality with respect to Mr. Carter doesn't implicate anything that the city did. And of course, we talk at great length about the fact that the city provided far more public defender time than the court required of the public defenders. And so there's a lot of layers and layers of individualized questions for the rest of the class members, the Strickland class members, that would not apply necessarily to Mr. Carter's claim. There's also the problem that Mr. Carter told Mr. Close that he could pay, at which point there was no need for counsel. Again, a typicality problem in my book. Okay. Thank you very much, Ms. Holliday. All right. Let's hear rebuttal. Thank you, Your Honor. And if I could, I'd like to save just a minute at the end for my co-counsel for Carter to address the typicality questions. Okay. But I wanted to start by going back to the point that you raised, Judge Luck, about ascertainability and Sherry. That was actually the second point that I had planned to bring up today, because that was a very serious error that the court made, and it is not a harmless error. The court incorporated into its predominance analysis its class member identification concerns This was a violation of the plain language of Rule 23. It was a violation of this court's clear direction in Sherry, and it infected every single one of the court's predominance holdings. And an important component of this concern for the district court was an idea that the jury at trial was going to have to determine class membership on a person-by-person basis, and that this would be a difficult job for the jury to do. And, Your Honor, it is not the job of the jury at trial to identify who's in and who's out of the class. The trial is for determining whether the plaintiffs meet their burden of proof on the elements of the claims. And the fact that the judge put a thumb down on the scale against predominance with this is deeply flawed. And it But that wasn't the only basis for its predominance finding. I mean, it went through the issues that it thought were common issues. Let's take away the identification of class members. But there were still four or five issues, and the court there said that, as to some of those, including some critical ones, which we started talking about originally, that those required individual findings. So if the court's right about that, I'm just not sure that it also, looking at this class member issue in the predominance finding, affects or infects the rest of the otherwise correct analysis, assuming it's correct. Yeah. I mean, I believe it does, Your Honor, because it's a balancing test. And because you don't know how the balance weighs, and you have the wrong things in the balance, and it's a thumb down on the scale against predominance, which is, and it's just not the way that the predominance inquiry is supposed to be done. And it's a total violation of the court's direction in Cherry. I do want to go back to this other point, and that is the question of hearings, because this is important also. And the idea that there were bearded determinations on this record is hypothetical. And we have cited decisions from six sister circuits that, when weighing predominance, the court should not consider hypothetical defenses where there is no proof. And that's exactly the situation that we have here. I'm having trouble with finding that it's hypothetical where a number of the judges said that, as a general matter, they did this, and the public defenders testified. Now, I'm sure that testimony is self-serving. There's no doubt it could be impeached, but can we really say there's no evidence that it's completely hypothetical that this happened, where there's a lot of testimony suggests that these inquiries were, in fact, done? I don't think there is a lot of testimony that suggests inquiries were done. There is certainly testimony that there were hearings. People came before the court. The judge asked them if they had the money. But there's not a lot of testimony about what was asked after that. So the exploration of the reasons for failure to pay, the bona fide efforts of the class member, there is no testimony that those things happened. And we know from the evidence itself that when the state made the argument to the Supreme Court of the United States that the state court judge in that case could have made those findings, but just not written them down, the court held that it could not read the required findings because the record wasn't there. Thank you very much. Let's give your co-counsel a minute. Brian, can we put a minute on the clock? I know this will be tough. Good morning. I'll be as fast as I can. Good morning. Leslie Bailey for the Carter Appellants. The essence of the Sixth Amendment and Bearden claim against Close on behalf of the Close subclass, this is a constructive denial of counsel claim. It is not dependent on whether the public defender happened to be in the courtroom or not. Public defenders do a lot of other things other than appear in court. Granted, Mr. Close certainly should have done that, but he also should have done the work with his clients to gather the information needed to demand a Bearden determination from the court. That didn't happen for any of the class members. Can I ask you a question? Do you disagree that if we conclude that the district court's no-predominance finding for the Bearden class was correct or was not error, do you disagree that this Close subclass claim sort of evaporates? I do disagree, Your Honor, because I think there's ample evidence just on behalf of the subclass. They could find that Close, in particular, failed to request Bearden determinations. There's enough common evidence just on behalf of that class. Okay. Thank you very much. Okay. That case is submitted, and we will move to